UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOHN GAYDEN, Jr.,

                         Petitioner,

      -vs-                              **DECISION AND ORDER**
                                        **No. 6:12-cv-06196-MAT**

Supt. P. CHAPPIUS,

                         Respondent.
_____

## I.    Introduction

      Proceeding <u>pro</u> <u>se</u>, John Gayden, Jr. ("Petitioner") instituted
this action pursuant to 28 U.S.C. § 2254. Petitioner challenges the
constitutionality of his detention in Respondent's custody pursuant
to a judgment entered against him in New York State Supreme Court,
Monroe County (Valentino, J.), on April 20, 2007, following a jury
verdict convicting him one count of Course of Sexual Conduct
Against a Child in the First Degree (New York Penal Law ("P.L.")
§ 130.75(1)(b)).

## II.   Factual Background and Procedural History

      The conviction here at issue stems from allegations that
Petitioner sexually abused his girlfriend's eleven-year-old son,
D.J., in the first half of 2006. The abuse was comprised of four
separate incidents that occurred during D.J.'s trips to
Petitioner's mother's house in the City of Rochester, New York, to
visit Petitioner. On September 25, 2006, a Monroe County grand jury
charged petitioner with one count of Course of Sexual Conduct
Against a Child in the First Degree ("CSC 1st") (P.L.

§ 130.75(1)(b)), based on two or more sexual acts with a child less than thirteen-years-old; the sexual acts "included at least one act of oral sexual conduct and anal sexual conduct," which occurred "over a period of time not less than three months in duration . . . on or about and between January 26, 2006 and August 31, 2006."

The parties stipulated that, starting on January 26, 2006,[1] Petitioner would often visit Petitioner at his mother's house. Sometimes D.J.'s brother, JD, who was the son of Petitioner and D.J.'s mother, would accompany him. Petitioner's room was upstairs, and they would "hang out" there, watching basketball games on television or playing video games. It was during the period from January 26, 2006, through June 20, 2006, that Petitioner started touching D.J. in a sexually inappropriate manner while they were in Petitioner's room. The contact progressed from Petitioner touching D.J.'s penis with his hand to Petitioner anally and orally sodomizing him. D.J. did not tell anyone because he was scared of Petitioner. Despite the abuse, D.J. continued to go over to Petitioner's mother's house because his younger brother "kept going over there," and D.J. "didn't want nothing to happen to him." T.485-87, 744.

D.J. eventually disclosed the abuse to his mother after she asked him "what was going on." T.487. After the two talked for "a

_____

[1]

The parties entered into this stipulation so as to avoid having D.J. testify that he started going over to visit Petitioner after he got out of prison on January 26, 2006.

long time," T. 527-28, D.J.'s mother then took him to the emergency room at Strong Memorial Hospital ("SMH") on September 10, 2006, where he was examined. Later that night, he met with members of the Rochester Police Department for about an hour. T.487-89, 524-31; 640-41; 780-83. Subsequently, D.J. was examined by another doctor who conducted a physical exam and performed other tests. T.489, 566-67.

On October 12, 2006, Petitioner called D.J.'s mother's house, and D.J. answered the telephone. T.489-92. Petitioner made several comments to D.J. during the call, including, "I want to come home" and "I love you". Petitioner also asked D.J., "Are you mad at me?" T.783-97; 875-76.

Dr. Ann Lenane, an expert in the field of child abuse, an emergency room pediatrician, and the medical director of the Referral and Evaluation of Abused Children clinic at Strong Memorial Hospital, testified for the prosecution. Dr. Lenane examined D.J. on September 19, 2006, after speaking with D.J.'s mother, who described the child's medical history. Dr. Lenane testified that certain changes in behavior are relevant to a diagnosis of sexual abuse, and D.J. displayed three symptoms that were indicative of sexual abuse, namely, the new onset of bedwetting for the prior six months; and a history of pain with bowel movement, which he had revealed to his regular physician. T.619-22. Although the trial judge directed that this testimony be stricken as hearsay, because it was based on the mother's

statements to Dr. Lenane, T.622-23, defense counsel later "opened the door" to such testimony by eliciting from Dr. Lenane that there could be many reasons for constipation. T.667. Under the prosecutor's questioning, Dr. Lenane testified that D.J.'s mother had informed her that D.J.'s pediatrician recently had diagnosed him with constipation. T.672, 675-76. Dr. Lenane testified that constipation is "one of the problems that children that have been sexually abused may have" because anal sexual abuse can cause bowel movements to be painful, which in turn can lead the child to avoid defecating. T.672-73.

Clinically, Dr. Lenane saw no specific evidence of sexual abuse during her examination of D.J., such as bleeding, dilation, ripping, tearing, abnormal lesions, or fissures in his anal area. T.668-69. She opined, however, that the "majority" of children who have been sexually abused show no specific findings of sexual abuse. T.629-36. According to Dr. Lenane, a "normal examination" thus is still "consistent with the possibility of child sexual abuse." T.670-71. As an example, Dr. Lenane testified that the absence of "anal dilation" does not mean that the child's anus was not penetrated by a penis or other object because most children who have been penetrated with an adult penis show no specific physical symptoms, and lubrication prior to penetration would make symptoms even less likely. T.636-38. In addition, Dr. Lenane opined, it would be "very unusual" for there to be specific findings of abuse

where, as here, the abuse took place more than four weeks prior to the examination. T.638-39.

The defense called no witnesses, and Petitioner did not testify. The defense focused on highlighting inconsistencies in D.J.'s various statements and his delay in reporting what had happened. Counsel argued that it was implausible for the abuse to have occurred in a bedroom in a small apartment where other people (including Petitioner's mother) were present. Counsel emphasized the lack of DNA evidence, medical evidence, or other physical indicia of sexual abuse, and reiterated that Dr. Lenane's examination findings were "normal." Counsel attacked Dr. Lenane's credibility, arguing that no matter what her physical examination revealed, she was "going to say it's consistent with sexual abuse." T.861. In support of his argument that Dr. Lenane functions as an arm of the police and the district attorney's office, counsel pointed to her admission that "when she sees a kid she assumes abuse," which is the opposite of the presumption of innocence. T.859-60.    On March 16, 2007, the jury returned a verdict finding Petitioner guilty as charged in the indictment. T.937.

Petitioner appeared with defense counsel at a sentencing hearing on April 20, 2007, at which he was adjudicated a second violent felony offender based on a previous conviction for Criminal Possession of a Loaded Firearm in the Second Degree. S.2-5. The trial court sentenced Petitioner to a determinate term of 22 years

in prison to be followed by 5 years of post-release supervision. S.15-18.

Represented by new counsel, Petitioner pursued a direct appeal to the Appellate Division, Fourth Department, of New York State Supreme Court. Petitioner also filed a pro se supplemental appellate brief. The Fourth Department unanimously affirmed the conviction, and the New York Court of Appeals denied leave. People v. Gayden, 107 A.D.3d 1428 (4th Dep't 2013), lv. denied, 22 N.Y.3d 1138 (2014). There is no record of Petitioner having filed any post-conviction collateral motions in state court.

On April 17, 2012, while his state-court direct appeal was pending, Petitioner filed a habeas petition ("Petition") (Dkt #1) in this Court, asserting that (1) his state-court appeal had been repeatedly and unfairly delayed; and (2) this delay was caused by the ineffectiveness of Petitioner's assigned appellate counsel. On October 9, 2012, Petitioner filed a pleading captioned as "Petitioner's Federal Supplemental Brief") ("Supplemental Brief") (Dkt #13) attaching additional documentation and asserting new habeas claims. In a Decision and Order dated September 9, 2013 (Dkt #23), this Court found that all the claims in the Petition and the Supplemental Brief were unexhausted and dismissed them without prejudice.

On April 7, 2014, Petitioner filed a motion (Dkt. #25) stating that his direct appeal was complete, and requesting that his habeas petition be returned to this Court's docket for adjudication.

-6-

Respondent did not oppose the motion. (Dkt. #26). On May 5, 2014, the Court issued an order reopening the proceeding. (Dkt. #28).

Respondent filed an answer and opposition memorandum of law, construing Petitioner's papers to include all of the claims in the Petition (Dkt. #1) and Supplemental Brief (Dkt. #13). However, as Respondent notes, this Court already determined, in its September 9, 2013 Decision and Order that no relief is available in connection with the claims in the Petition for appellate delay and ineffective appellate counsel. See Dkt. #23, pp. 11-12. Therefore, Respondent has addressed only the claims asserted in the Supplemental Brief (Dkt. #13).

In the Supplemental Brief, Petitioner mentions multiple claims based on differing legal theories under the same point heading. For ease of reference, the Court has renumbered the claims in the Supplemental Brief as follows:

> Ground One: The trial court's erroneous jury charge, coupled with the evidence elicited by the prosecution, permitted the People to expand the charged crimes beyond those alleged in the indictment (Point I);

> Ground Two: The verdict was based on insufficient evidence, because the People failed to establish that the incidents took place over a three-month period, and because the recorded telephone call did not establish Petitioner's consciousness of guilt (Point II);

> Ground Three: Petitioner's Due Process rights were violated by a factual stipulation regarding the beginning date of the relevant time period for the course of sexual conduct (Point III);

> Ground Four: The prosecutor committed misconduct (Points I & III) insofar as she (a) made a "sudden change of theory that petitioner sexually abused [D.J.] from January 26, 2006 until the Miami Heat won the

championship"; (b) asked the jury in her summation "to speculate on evidence that was never presented on it[]s direct case concerning 'physical injury'"; and (c) "caused its expert witnesses to speculate and mislead the jury and overall made the jury believe petitioner was accused with committing more acts than charged";

Ground Five: Trial counsel was ineffective (Point III) because he (a) "did not seek out the assistance or the advice of [a] medical expert"; (b) "did not introduce any testimony of doctors who initially examined [D.J.]," and did not "introduce any of said doctors['] medical findings"; and (c) erred by "reconstructing the stipulation"; and

Ground Six: Petitioner is actually innocent of the charges (Point III).

With regard to all of these claims, Respondent has raised the affirmative defenses of non-exhaustion and procedural default. Respondent argues that, in the alternative, all of the claims lack merit. In his reply, Petitioner briefly asserted that his ineffective assistance of trial counsel and actual innocence claims are exhausted, but did not address Respondent's exhaustion argument as to his remaining claims.

For the reasons discussed below, Petitioner's request for a writ of habeas corpus is denied, and the petition is dismissed.

**III. The Exhaustion Requirement for § 2254 Petitions**

**A.   Legal Principles**

In general, a petitioner must exhaust all available state remedies before a federal court may consider his petition for a writ of habeas corpus. 28 U.S.C. § 2254(b)(1)(A); Picard v. Connor, 404 U.S. 270, 275 (1971). A petitioner therefore must first give

the state the "'opportunity to . . . correct' alleged violations of its prisoners' federal rights[,]" Baldwin v. Reese, 541 U.S. 27, 29 (2004) (quoting Duncan v. Henry, 513 U.S. 364, 365 (1995)), by "fairly present[ing]" his constitutional claims "in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." Id.; see also O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). In New York, to invoke "one complete round of the State's established appellate review process," O'Sullivan, 526 U.S. at 845, a petitioner must first appeal his conviction to the pertinent Appellate Division, and then must seek further review of that conviction by applying to the New York Court of Appeals for a certificate granting leave to appeal. Galdamez v. Keane, 394 F.3d 68, 74 (2d Cir. 2005) (citing Morgan v. Bennett, 204 F.3d at 369; N.Y. CRIM. PROC. LAW § 460.20).

Respondent argues that all of Petitioner's claims (Grounds 1, 2, 3, 4(a), 4(b), 4(c), 5(a), 5(b), 5(c), and 6) are unexhausted, but must be deemed exhausted and procedurally defaulted.

**B.   Grounds 1, 3, 4(a), 4(b), 4(c),  5(a), 5(b), and 5(c)**

Respondent argues that Grounds 1, 3, 4(a), 4(b), 4(c), 5(a), 5(b), and 5(c) are unexhausted because, although Petitioner raised the claims in his pro se supplemental brief on direct appeal, he did not mention or otherwise reference them in his leave application, see N.Y. CRIM. PROC. LAW § 450.90(1). "New York Court rules require that leave applicants submit to the Court of Appeals

briefs and other documents from the lower courts to 'identify the issues on which the application is based' and to pay '[p]articular written attention . . . to identifying problems of reviewability and preservation of error.'" Galdemez v. Keane, 394 F.3d 68, 74 (2d Cir. 2005) (quoting former N.Y. CT. R. § 500.10(a)[2] (McKinney 1999)).

Here, in the leave letter, appellate counsel specifically identified five issues for review under the heading "Issues". See SR.1272-73. Appellate counsel referred to the excessive length of Petitioner's sentence as "[t]he final issue raised and preserved for review[.]" SR.1273. Appellate counsel did not mention—generally or specifically—any of the issues raised in Petitioner's pro se supplemental brief. Under similar circumstances, the Second Circuit has assumed that the New York Court of Appeals "would construe a petitioner's leave application as abandoning claims that the petitioner had pressed to the Appellate Division below." Galdamez, 394 F.3d at 74 (citing, inter alia, Jordan v. Lefevre, 206 F.3d 196 (2d Cir. 2000) (holding that petitioner had not fairly presented his claims to the Court of Appeals when the accompanying letter argued "a single claim at length and [made] only [a] passing

---

[2]

A similar requirement to that found in Section 500.10(a) is now located at Section 500.20(a)(4). See N.Y. CT. R. § 500.20(a)(4) ("The letter shall indicate . . . the grounds upon which leave to appeal is sought. Particular written attention shall be given to reviewability and preservation of error, identifying and reproducing the particular portions of the record where the questions sought to be reviewed are raised and preserved.").

reference to possible other claims to be found in the attached briefs"); Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991) (petitioner argued one claim in his leave to appeal letter to the Court of Appeals and attached his Appellate Division briefs, which had raised that issue plus two others; the claims referred to only in his attached briefs and not also in the letter were not fairly presented)). Petitioner thus failed to "invok[e] one complete round of the State's established appellate review process[,]" O'Sullivan, 526 U.S. at 844, with regard to Grounds 1, 3, 4(a), 4(b), 4(c), 5(a), 5(b), and 5(c).

"For exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state if it is clear that the state court would hold the claim procedurally barred.'" Grey, 933 F.2d at 120 (quoting Harris v. Reed, 489 U.S. 255, 263, n. 9 (other citations omitted)). When a petitioner "no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. Section 2254(b)[,]" id., because he is procedurally barred by state law from raising such claims, the habeas court may deem the claims exhausted but procedurally defaulted. Id. at 120-21 (quotation omitted). That is the case here.

First, he has already utilized the one direct appeal to which he is entitled. See N.Y. R. Ct. § 500.20(d) & N.Y. Crim. Proc. Law § 460.10(5) (providing for a 30-day window for any such application to be filed); N.Y. R. Ct. § 500.20(a)(2) (leave letter must indicate that "that no application for the same relief has been

addressed to a justice of the Appellate Division, as only one application is available"). Second, because Petitioner presented the claims on direct appeal (at least to the Appellate Division), Petitioner is foreclosed from raising them in a collateral motion to vacate in the trial court. See N.Y. CRIM. PROC. LAW § 440.10(2)(b) (mandating dismissal of C.P.L. § 440.10 motion if claim was raised on direct review); see also, e.g., Gantt v. Martuscello, No. 9:12-CV-657(MAD/CFH), 2014 WL 112359, at *9-*10 (N.D.N.Y. Jan. 10, 2014) (finding that ineffective assistance of trial counsel claim was required to be deemed exhausted but procedurally barred under C.P.L. § 440.10(2)(b) where petitioner raised claim on direct appeal but failed to fairly present it in federal constitutional terms); Parrilla v. Goord, No. 02 CIV. 5443(WHP), 2005 WL 1422132, at *11 (S.D.N.Y. June 20, 2005) (finding that erroneous amendment of indictment claim was required to be deemed exhausted but procedurally barred under C.P.L. § 440.10(2)(b) where petitioner raised claim on direct appeal but failed to fairly present it in federal constitutional terms).

Because Petitioner no longer has remedies available as to Grounds 1, 3, 4(a), 4(b), 4(c), 5(a), 5(b), and 5(c), and any attempt at exhaustion would be futile, they should be deemed exhausted. E.g., Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997). The foregoing procedural bars to presentment in state court, which cause the Court to deem the claims exhausted, also render them procedurally defaulted. See id. ("Although Petitioner's claim of

ineffective assistance is deemed exhausted, we nonetheless find that, by defaulting on that claim in state court, Reyes forfeits that claim on federal habeas review, even though the claim is brought as cause for another procedural default.").

To overcome such a procedural default, a habeas petitioner must demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. Gray v. Netherland, 518 U.S. 152, 162 (1996) (citations omitted). In his reply brief, Petitioner did not attempt to demonstrate cause or prejudice, and the Court finds that neither cause nor prejudice is apparent on the record before it. Petitioner does allege a stand-alone claim of actual innocence (Ground 6), which the Court will consider for the purposes of determining whether he can fulfill the fundamental miscarriage of justice exception.

In Schlup v. Delo, 513 U.S. 298 (1995), the Supreme Court held that a claim of actual innocence may excuse a procedural bar and act as a "gateway" through which the court may consider a habeas petitioner's defaulted claims. Id. at 315-16; 327. Although a habeas petitioner is not bound by the rules of evidentiary admissibility in presenting alleged new evidence of actual innocence, Schlup, 513 U.S. at 324, the proffered evidence "must be both 'credible' and 'compelling.'" Rivas v. Fischer, 687 F.3d 514, 541 (2d Cir. 2012) (quoting House v. Bell, 547 U.S. 518, 521

-13-

(2006)). To be "credible," the evidence must consist of "'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" Id. (quoting Schlup, 513 U.S. at 324). To be "compelling," the evidence must reveal that, "'more likely than not, in light of the new evidence, no reasonable juror would find [the petitioner] guilty beyond a reasonable doubt—or to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt.'" Id. (quoting House, 547 U.S. at 538). Here, Petitioner has offered no "new reliable evidence" of his actual innocence. He instead relies on the alleged lack of corroboration of the complainant's testimony. However, a petitioner "is expected to establish actual innocence based on new evidence rather than what was presented at trial." Lasso-Reina v. Haponick, 05 Civ. 8817, 2009 WL 3334843, at *9 (S.D.N.Y. Oct. 14, 2009) (citing Schlup, 513 U.S. at 327); see also Jones v. Armstrong, 367 F. App'x 256, 259 (2d Cir.) ("Petitioner has not presented any new evidence that was not presented at his trial. Instead, he argues that the jury placed too much emphasis on the testimonial evidence and not enough emphasis on the physical evidence. This does not make out an actual innocence claim allowing this Court to disregard [his] procedural default."), cert. denied, 130 S. Ct. 3367 (2010); Fernandez v. Artus, 07 Civ. 2532, 2009 WL 1586271, at *15 (S.D.N.Y. June 8, 2009) ("To claim actual innocence, a petitioner must show more than the prosecution's

evidence was weak or even insufficient; rather, he must present new evidence . . . of his innocence."). Petitioner's assertion of actual innocence falls far short of the <u>Schlup</u> standard because he has failed to provide any new evidence to support his claim that he is factually innocent.

In sum, Petitioner has shown neither cause nor prejudice. Further, his claim of actual innocence is meritless and he therefore cannot demonstrate a fundamental miscarriage of justice. Consequently, Grounds 1, 3, 4(a), 4(b), 4(c), 5(a), 5(b), and 5(c) are subject to an excused procedural default and must be denied as procedurally barred from habeas review.

### B.   Ground 2: Insufficiency of the Evidence

Respondent argues that Petitioner also failed to exhaust his insufficiency claim, because he did not raise the claim in either his counseled or his <u>pro se</u> brief in the Appellate Division. The Court agrees. Although Petitioner's appellate counsel asserted a claim that the verdict was against the weight of the credible evidence, this did not fairly present his current legal insufficiency claim in federal constitutional terms.

A petitioner fulfills the "fair presentation" requirement if he presents his habeas claim to the state court in a way that is "likely to alert the court to [its] federal nature." <u>Daye v. Attorney Gen'l of N.Y.</u>, 696 F.2d 186, 192 (2d Cir. 1982) (<u>in banc</u>). This may be accomplished by means of, <u>e.g.</u>, the petitioner's reliance on pertinent federal cases that employ constitutional

analysis, or state cases that apply constitutional analysis in similar fact situations; the assertion of the claim in terms so particular as to call to mind specific constitutionally-protected rights; or the allegation of a fact pattern that falls within the mainstream of constitutional litigation. Id. at 194. Here, however, appellate counsel exclusively cited state-law cases regarding the reversal of jury verdicts as against the weight of the evidence. Appellate counsel cited no federal cases and did not refer to the constitutional standard for reviewing legal insufficiency claims. Moreover, by phrasing the claim as one challenging the "weight" of the evidence, Petitioner failed to state the claim in such a way as to "call to mind" a constitutional right. See, e.g., Lewis v. Dufrain, 392 F. Supp.2d 498, 502 & n.2 (W.D.N.Y. 2005) (finding legal insufficiency claim not fairly presented to state court where "the only evidentiary claim presented to the appellate division was that the verdict was against the weight of the evidence"; and the "two claims call for distinctly different analyses") (citations omitted); Walton v. Ricks, No. 01 CIV. 5265(LMM), 2003 WL 1873607, at *8 (S.D.N.Y. Jan. 31, 2003) (similar). Therefore, the state courts were never afforded an opportunity to pass upon Petitioner's legal sufficiency claim. As a result, Ground 2 is unexhausted.

Petitioner, however, has no remedies available to him in state court, and therefore returning to state court to would be futile. As noted above, Petitioner has already used the one direct appeal to which he is entitled. If Petitioner were to raise the legal

insufficiency claim in connection with a C.P.L. § 440.10 collateral motion to vacate the judgment, the state court would be required to deny the motion because such a claim is apparent on the trial record and could have been raised on direct appeal. <u>Lewis</u>, 392 F. Supp.23d at 502 (citing N.Y. CRIM. PROC. LAW § 440.10(2)(c) (barring collateral review of claims that could have been raised on direct appeal). "Because Petitioner now has no procedural recourse to New York's courts to advance his claim, the claim should be deemed exhausted." <u>Walton</u>, 2003 WL 1873607, at *8 (citing <u>Bossett v. Walker</u>, 41 F.3d 825, 828-29 (2d Cir. 1994) (petitioner had no remedies available to exhaust claim of insufficient evidence that had not been presented to New York Court of Appeals in leave application; petitioner had used his one direct appeal and C.P.L. § 440.10(2)(c) required dismissal if claim were raised in collateral motion); other citation omitted).

### C.   Ground 6

Respondent argues that Petitioner did not exhaust his actual innocence claim because he failed to included in either of his Appellate Division briefs or in his leave application to the Court of Appeals. According to Respondent, the claim must deemed exhausted and procedurally defaulted because Petitioner has no state-court venue in which to raise it. It appears to this Court, however, that Petitioner potentially could assert the claim in a collateral motion to vacate pursuant to C.P.L. § 440.10. <u>See</u> <u>People v. Jones</u>, 24 N.Y.3d 623, 627 (2014) ("Newly discovered evidence is

one of the bases under CPL 440.10(1) that defendants may allege when seeking postjudgment relief[.]") (citation omitted). Although the claim likely would be denied on the merits, since Petitioner's evidence is not actually "newly discovered", this Court cannot say that Petitioner is procedurally barred from raising the claim in state court.

Allowing Petitioner to return to state court to exhaust the claim would be futile because the claim is not cognizable on habeas review. See, e.g., Herrera v. Collins, 506 U.S. 390, 400 (1993) ("[C]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."). Accordingly, the Court denies the claim on the basis that it does not present a cognizable constitutional question. E.g., Young v. Kirkpatrick, No. 07-CV-0371(VEB), 2010 WL 4721592, at *12 (W.D.N.Y. Nov. 22, 2010) (citing, inter alia, Green v. Walker, 205 F.3d 1322, 1999 WL 1489805, at *1 (2d Cir. 1999) (summary order) ("This Court may issue a certificate of appeal-ability only upon 'a substantial showing of the denial of a constitutional right.' 28 U.S.C. § 2253(c)(2). Claims of actual innocence, standing alone, fall short of this standard.") (citing Herrera, 506 U.S. at 400).

## IV. Conclusion

For the reasons discussed above, the petition (Dkt. #1) is dismissed. As Petitioner has failed to make a substantial showing

of a denial of a constitutional right, no certificate of appealability will issue. <u>See</u> 28 U.S.C. § 2253(c)(2). Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. The Clerk of the Court is requested to close this case.

**SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:    Rochester, New York
          May 4, 2015